RONALD F. ROTH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roth v. Commissioner
Docket No. 3044.71.
United States Tax Court
T.C. Memo 1973-175; 1973 Tax Ct. Memo LEXIS 109; 32 T.C.M. (CCH) 834; T.C.M. (RIA) 73175; August 13, 1973, Filed Ronald F. Roth, pro se. Jeffrey C. Kahn, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1967 in the amount of $4,291.03. The sole issue for determination is whether the lump-sum distribution received by petitioner in 1967 pursuant to the termination of Ferber Pen Corporation's (Ferber) profit-sharing plan was on account of petitioner's separation from Ferber's service.If so, petitioner *110 is entitled to capital gains treatment for the 2 received distribution pursuant to section 402(a)(2) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner at the time of filing the petition herein resided in Mooreston, New Jersey. He filed an individual Federal income tax return for the taxable year 1967 on the cash basis with the district director of internal revenue, Newark, New Jersey. Petitioner was employed by Ferber from January 1951 until January 1964 when Ferber was merged into Esterbrook Pen Company (Esterbrook). Esterbrook continued the noncontributory profit-sharing plan previously adopted by Ferber. Ferber was operated as a separate division of Esterbrook and petitioner remained in the employment of Esterbrook. In 1966 Ferber was liquidated and its operations in Englewood, New Jersey, were relocated to the Esterbrook facilities in Cherry Hill, New Jersey. Petitioner then moved to Moorestown, New Jersey, *111 to continue his employment with Esterbrook. On February 27, 1967, Esterbrook terminated the Ferber profit-sharing plan effective as of April 28, 1966. 3 In 1967, the trustees of the Ferber profit-sharing plan distributed $13,349.42 to petitioner which was the entire amount of his share of the terminated profit-sharing plan. In 1968 Esterbrook merged with Venus Pen Company of Lewisburg, Tennessee, and the entity became the Venus-Esterbrook Corporation (Venus-Esterbrook). The operations were continued at the Cherry Hill, New Jersey, facilities of Esterbrook. In June 1969 Venus-Esterbrook moved the Cherry Hill facilities to Lewisburg, Tennessee. Petitioner traveled to Lewisburg, Tennessee, to assist in the erection of the machinery and equipment of Venus-Esterbrook. Petitioner's employment with Venus-Esterbrook was terminated in November 1969. Petitioner did not include any portion of the $13,349.42 received on termination of the profit-sharing plan in his 1967 tax return. Petitioner's 1967 return reflected income of $2,925.53 that resulted from inclusion of the cash surrender value of a life insurance policy in his gross income for 1967. This insurance policy *112 was terminated upon termination of the profit-sharing plan. [2]
Respondent in his notice of deficiency dated February 26, 1971, determined that the $13,349.42 lump-sum distribution was includable as an ordinary income item in petitioner's 4 taxable income for 1967. OPINION The only issue for disposition is whether petitioner's lump-sum distribution received in 1967 from Ferber's terminated profit-sharing plan resulted on account of petitioner's separation from Ferber's service. The taxation of this distribution as a capital gain or ordinary income item is dependent upon this initial determination. To be entitled to capital gains treatment under section 402(a)(2), [3] the distribution is required to be on account of the distributee's separation from service. In this context, it is clear that when the taxpayer becomes an employee of the acquiring corporation and the new employer adopts and continues the acquired corporation's plan, the acquiring corporation *113 technically becomes the employer for purpose of section 402(a)(2). Therefore, a distribution to the taxpayer pursuant to the subsequent termination of the plan that is not 5 accompanied by severance of the taxpayer's new employment will be considered to have resulted on account of termination of the plan and not on account of separation from the service. See Rybacki v. Conley, 340 F.2d 944 (C.A. 2, 1965); Jack E. Schlegel, 46 T.C. 706 (1966); and E. N. Funkhouser, 44 T.C. 178 (1965), affd. 375 F.2d l (C.A. 4, 1967). *114 Petitioner has the burden of proving that the distribution from Ferber's terminated plan was on account of his separation from Ferber's service. See E. N. Funkhouser, supra at 184. Petitioner has failed to satisfy his burden.[4] Paragraph 5 of the stipulation of facts specifically, and the record as a whole generally, infer that Esterbrook adopted Ferber's profit-sharing plan pursuant to Esterbrook's acquisition of Ferber. Petitioner has made no effort to controvert this inference. Moreover, petitioner has not argued, nor offered any evidence to establish, that Ferber's intent to terminate its plan was formulated prior to, or on, the date of its acquisition by Esterbrook. Since Esterbrook continued Ferber's plan for more than two years after its acquisition of Ferber, and since petitioner has not dispelled the inference that Esterbrook adopted 6 Ferber's plan, we are forced to conclude that Esterbrook did adopt Ferber's plan. This leads us to the conclusion *115 that petitioner's distribution from the terminated plan did not result on account of petitioner's termination of service. In effect, petitioner technically became an employee of Esterbrook subsequent to Esterbrook's acquisition of Ferber. Since we have concluded that Esterbrook adopted Ferber's plan, petitioner could have qualified for section 402(a) (2) capital gains treatment only if he had terminated his employment with Esterbrook simultaneously with his distribution from the terminated plan. Petitioner did not, however, terminate his employment with Esterbrook before or at the time he received the distribution from the terminated plan. Accordingly, petitioner's distribution resulted from the termination of the plan only and not on account of petitioner's separation from the service. Thus, petitioner is not eligible for capital gains treatment under section 402(a) (2). See Maurice Peterman, 50 T.C. 970 (1968). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954. ↩
2. The stated facts pertaining to the insurance policy were obtained from the stipulation of facts. The record does not clarify the precise relationship, if any, of the insurance policy to the profit-sharing plan. ↩
3. Sec. 402(a) (2) provides as follows: SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEE'S TRUST. (a) Taxability of Beneficiary of Exempt Trust. - * * * (2) Capital gains treatment for certain distributions. - In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, * * * the amount of such distribution, to the extent exceeding the amounts contributed by the employee * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * * ↩
4. Although petitioner was offered an additional opportunity by this Court to present additional facts pursuant to an order dated February 23, 1973, petitioner did not avail himself of the opportunity. ↩